IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JERRY L. LOVETT,

    Plaintiff,

v.                       Civil Action No. 3:08cv384

DR. JAMES B. PEAKS, SECRETARY
OF THE DEPARTMENT OF VETERANS AFFAIRS,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Motion for Summary Judgment (Docket No. 11) filed by Dr. James B. Peaks, Secretary of the Department of Veterans Affairs. For the reasons set forth below, the Motion for Summary Judgment will be granted.

## BACKGROUND

The Plaintiff, Jerry L. Lovett ("Lovett") is currently employed by the Department of Veterans Affairs as an Air Conditioning Equipment Mechanic at the Hunter Holmes McGuire Veterans Affairs Medical Center ("VAMC"), located in Richmond, Virginia.[1] Def's Mot. at 11. In January 2005, Lovett, a 52 year-old African-American male, along with six other individuals, applied for the position of Air Conditioning

---

[1] Lovett is proceeding *pro se* in this matter.

Equipment Operator Supervisor at the VMAC. Id. at 1, 5. The Department of Veterans Affairs ("Defendant"), however, selected David Dooley ("Dooley"), a 42 year-old Caucasian male, to fill the position.

At the time of the vacancy, Lovett had been employed by the VAMC for eight years, had 21 years of overall experience in heating and air conditioning installation and repair, and held an Associate's Degree in Mechanical Engineering Technology. Id. at 13. Dooley had been employed at the VMAC for only four years, but he had 24 years of overall experience in heating and air conditioning installation and repair. Id. at 11, 13.

After exhausting his administrative remedies, on June 23, 2008, Lovett filed this action, alleging discrimination in contravention of: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; and (2) the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C.S. § 621. Id. The Defendant subsequently filed a Motion for Summary Judgment (Docket No. 11).

The Defendant has proffered a number of "undisputed material facts" which assertedly provide grounds for summary judgment. Chief among these facts are:

- In his capacity as their first-line supervisor, Richard Ames ("Ames") completed evaluation forms for Lovett and Dooley titled "Supervisory Appraisal of Employees for

2

Promotion" ("SEAP form").   The SEAP form for the vacancy listed six job criteria, to be evaluated on a five-point scale, with a maximum score of 30.   *Ames gave Lovett a score of 19.   Ames gave Dooley a score of 22.*

- After the job applications were received, the Defendant convened a three-person "Rating and Ranking" panel to review the written submissions from each applicant and to identify those applicants who were deemed "qualified" for the position.   Lovett, Dooley, and six other applicants were deemed qualified for the position.   *Four applicants, including Dooley but not Lovett, were deemed "best qualified" for the position.*

- The Defendant then convened an Interview Panel to interview the eight applicants who were deemed "qualified."   Prior to the interviews, the Interview Panel developed a series of twelve performance-based questions to ask the applicants.   The questions were to be scored by the Panel, with a total possible score of 100 points per interview panel member.

- The Interview Panel conducted the interviews, and the scores of the interviewers were combined to rank each applicant.   *Lovett ranked fifth out of the seven interviewees who completed the process.   Dooley ranked first, and scored better than Dooley with each member of the Interview Panel.*   All three members of the Interview Panel testified that their scores reflected the merits of the candidate's responses to the interview questions and were not based on Lovett's race or age.

- The application packages, interview rating sheets, and cumulative rankings for all of the applicants were then forwarded to Roy Moore ("Moore"), the selecting official.   *Moore then independently made the decision to select Dooley based on the recommendation of the Interview Panel* and not on the basis of on Lovett's race or age.

Def's Mot. at 2-7 (emphases added).

In his response to the Government's Motion for Summary Judgment, Lovett failed to submit any evidence supporting his

3

claims of discrimination. Lovett also failed to challenge the Defendant's proffered "Statement of Undisputed Material Facts." Accordingly, the Court *may accept* those "undisputed material facts" as true under Local Rule 56(B).2 Nevertheless, as courts are instructed to take "special care with *pro se* litigants," see, e.g., Moore v. City of Harriman, 272 F.3d 769, 799 (6th Cir. 2001), it is prudent for the Court to scrutinize Lovett's Complaint for any facts which could plausibly support an inference of discrimination. Cf. Haine s v. Kerner, 404 U.S. 519, 520 (1972) (courts have a duty to "interpret charitably" pleadings filed by *pro se* litigants). These facts are largely found in the exhibits attached to Lovett's Complaint.

First, in his attached appeal of the prior Equal Employment Opportunity Commission ("EEOC") decision, Lovett noted that one member of the Interview Panel failed to take notes on his answers to certain questions during the interview. Pltf's Exhibit No. 5 at 6. This inaction allegedly suggests bias against Lovett and a "pre-selection of Dooley." Id. Second,

---

2 The sole argument advanced by Lovett in his Opposition to Summary Judgment (Docket No. 14) is that summary judgment should be denied because Dr. James Peaks, the Secretary of the Department of Veterans Affairs and the nominal Defendant in this case, did not assume that position until 2007, and was not involved in the hiring decision in 2005. That argument does not provide a basis for denying summary judgment, however, because it is well established that the appropriate defendant in Title VII and ADEA cases is the head of the department at the time that the action *is filed*. See Williams v. Virginia Nat'l Guard Bureau, 914 F.2d 250, 253 (4th Cir. 1990) ("[A] plaintiff filing an ADEA complaint . . . is subject to the same requirements as those filing complaints under Title VII and must name the head of the department.").

Lovett argues that one member of the Interview Panel "ascribed the higher scores given to [Dooley] to his overall 'impression' of [Dooley] even when the answers reflected in his notes do not show better answers for [Dooley]." Id. at 5. Third, at the time of the vacancy, Lovett had been working at the VAMC longer than Dooley. Id. at 7. Finally, Lovett possessed an Associate's Degree, whereas Dooley did not. Id. at 14. Lovett, however, failed to provide documentation for these potential arguments in any of his pleadings.

DISCUSSION

## I.   Standard Of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact in the case. See Fed. R. Civ. P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. See id.

Hence, summary judgment is only appropriate when, after discovery, the non-moving party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party. See Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996).

Nevertheless, a party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Accordingly, the party who bears the burden of proof at trial cannot survive summary judgment without sufficient evidence to sustain his or her burden of proof on that point. Celotex Corp., 477 U.S. at 327. These precepts and standards govern the resolution of the Defendant's Motion. Swann v. City of Richmond, 498 F. Supp. 2d 847, 853 (E.D. Va. 2007).

## II. Employment Discrimination Claims and The McDonnell Douglas Burden-Shifting Scheme

Lovett has asserted claims under both Title VII and the ADEA. Title VII prohibits discrimination on the basis of "race,

6

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Title VII "makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 526 (1993). The ADEA's core provision, codified at 29 U.S.C.S. § 623, prohibits employers and certain others from discrimination based on an individual's age whenever the individual is at least 40 years of age but less than 65 years of age.

Under both Title VII and the ADEA, there are two ways of proving intentional discrimination: (1) through direct evidence of intentional discrimination; or (2) through circumstantial evidence under the burden-shifting scheme established in McDonnell Douglas v. Green, 411 U.S. 792, 802-05 (1973). In the first method of proof, a plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Rhodes v. FDIC, 257 F.3d 373, 391-92 (4th Cir. 2001). Lovett has not proffered any direct evidence of intentional discrimination. Rather, Lovett has predicated his case on the creation of an inference of discrimination through

7

circumstantial evidence.  See Pltf's Compl. at 3.  Accordingly, Lovett's claims of discrimination will be assessed under the familiar McDonnell Douglas burden-shifting scheme.  See id.

In McDonnell Douglas, the Supreme Court set forth a burden-shifting scheme for discriminatory-treatment cases.  Under the scheme, a plaintiff must initially establish a *prima facie* case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  If the plaintiff is able make such a *prima facie* showing of discrimination, the evidentiary burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its challenged employment action.  Id.  If the employer meets this burden, then the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by demonstrating that the employer's proffered explanation for the adverse employment action is pretextual. Id.; see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).  This burden-shifting standard applies to Lovett's claims under both Title VII, see McDonnell Douglas Corp., 411 U.S. at 802-04, and the ADEA, see Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995).

A.   The Uncontested *Prima Facie* Case of Discrimination

Generally, a plaintiff can establishe a *prima facie* case of employment discrimination by demonstrating that: (1) he is a

8

member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by a similarly qualified applicant outside of the relevant protected class. See, e.g., McDonnell Douglas Corp., 411 U.S. at 802; Holland v. Wash. Homes, Inc., 487 F.3d 208, 218-19 (4th Cir. 2007). An adverse employment action is defined as "a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) (internal citations omitted).

The Defendant concedes that Lovett is able to establish a *prima facie* case of discrimination for the purposes of his Title VII and ADEA claims. Def's Mot. at 10. As a 52 year-old African-American male, Lovett is a member of a protected class under both Title VII and the ADEA. See id. Additionally, the denial of a job promotion, such as the one alleged by Lovett, is a paradigm example of an adverse employment action under both Title VII and the ADEA. See Muller v. United States Steel Corp., 509 F.2d 923, 929 (10th Cir. 1975). Lovett was also qualified for the position which he sought, and it was awarded to a person of a different race who was ten years younger than

9

Lovett.  See Def's Mot. at 10.   Therefore, Lovett has satisfied the first prong of the McDonnell Douglass burden-shifting scheme, and the burden of production now shifts to the Defendant to articulate its legitimate reason(s) for failing to promote Lovett.

### B.   The Defendant's Asserted Legitimate, Nondiscriminatory Reason For Failing To Promote Lovett

As noted above, if a plaintiff establishes a *prima facie* case of discrimination, the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action at issue. McDonnell Douglas Corp., 411 U.S. at 802.  In assessing whether an employer's proffered nondiscriminatory reason is acceptable, "a court should not act as a 'super-personnel department' and undertake to determine whether a defendant's perceptions of an employee's qualifications are erroneous." Bailey v. Anne Arundel County, 259 F. Supp. 2d 421, 429 (D. Md. 2003) (addressing both Title VII and ADEA claims). Rather, to avoid undue interference in personnel decisions by courts, it is clear that an "employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 259 (1981).  Fundamentally, therefore, "[w]hen an employer gives a legitimate, nondiscriminatory reason

for discharging the plaintiff, it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [challenged action]." Muhammad v. Giant Food, 108 Fed. Appx. 757, 765 (4th Cir. 2004).

The Defendant contends that "Dooley [was selected] for this position because it was the perception of the Interview Panel and the selecting official that Mr. Dooley was the best qualified applicant for the position." Def's Mot. at 11. It is uncontroverted that an employee's qualifications for a particular position may form the basis of a lawful employment action. Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ("Relative employee qualifications are widely recognized as valid, nondiscriminatory bases for any adverse employment action."). Therefore, the Defendant's proffered legitimate, nondiscriminatory reason is sufficient to satisfy the second prong of the McDonnell Douglas burden-shifting formula.

### C.  Possible Pretext

Once an employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action at issue, a plaintiff must offer evidence from which a jury could

find that the employer's asserted justification for the adverse employment action was pretextual. McDonnell Douglas, 411 U.S. at 802. "A plaintiff alleging a failure to promote can prove pretext by showing that [he] was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006). Of course, "[t]he general standards for summary judgment naturally inform any assessment of whether a plaintiff has provided sufficient evidence of pretext such that [his] case may proceed to trial." Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006). And, in proving pretext, a plaintiff cannot merely make "conclusory" statements which are not "adequately supported by the facts in the record" before the Court. See, e.g., Chappell v. School Bd., 12 F. Supp. 2d 509, 518 (E.D. Va. 1998).

At the time of his selection, Dooley had been employed at the VAMC since 2001. Def's Mot. at 11. From 1990 through 2001, Dooley was employed as an engineer in the Climate Control Shop at Fort Lee, Virginia. Id. From 1983 through 1987, Dooley worked for Bartlett and Gates Heating and Cooling, installing commercial and residential heating and air conditioning units. Id. Notably, in all three of these prior positions, Dooley had

supervisory experience.   Accordingly, at the time of his
promotion, Dooley had both more overall, and more supervisory,
experience than Lovett in the air conditioning and heating
industry.3   Id. at 13.

Additionally, it is evident that the Rating and Ranking
Panel credited Dooley's experience in the industry by rating him
as one of the "best qualified" candidates to fill the position.
Also, based on Dooley's oral responses to the Interview Panel's
questions, Dooley distinguished himself as the leading candidate
for the position, and he was ranked higher than Lovett by all
three members of the Panel.   Id. at 14.   These assessments of
the two candidates' qualifications were echoed by Ames, Dooley
and Lovett's first-line supervisor at the VAMC, and also by
Moore, the selecting official for the position.   Id. at 3.
Furthermore, Lovett's allegation that the Interview Panel "pre-
selected" Dooley over Lovett does not, by itself, create a
genuine inference of discrimination.   See Kennedy v. Landon, 598
F.2d 337, 341 (4th Cir. 1979) ("Although the pre-selection of
[an applicant] may have violated the rules of the Department of
Corrections, it does not evidence the type of discrimination

---

3 The comparison of Dooley and Lovett's *overall* experience in the industry
undercuts the persuasive effect of Lovett's argument that he had more
experience at *the VMAC* than Dooley at the time of the job vacancy.

13

that is prohibited by Title VII.").

Fundamentally, Lovett has presented no evidence to challenge the veracity of the Defendant's contention that it considered Dooley to be the most qualified applicant for the job. And, in light of the foregoing consistency in the relative rankings of Dooley and Lovett among the agents for the VAMC, Lovett would have to demonstrate a virtual conspiracy in order to prove pretext; a fact which seems highly unlikely given the largely-uncontested record before the Court. Cf. Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 134-35 (4th Cir. 2002) (evidence of subjective beliefs, "without more, is insufficient to create a genuine issue of material fact as to any discriminatory conduct.").

Lovett's sole remaining argument from which this Court could conceptually derive an inference of discrimination is the fact that Lovett possessed an Associate's Degree in Mechanical Engineering Technology whereas Dooley did not. While this may be true, "[n]othing in Title VII requires an employer to promote the applicant with the most years of formal education or the most advanced degree," and the mere fact that one applicant had an Associate's Degree where the other did not "is simply not probative of pretext." Jackson v. South Carolina Dep't of

14

Highways & Public Transp., 1991 U.S. Dist. LEXIS 8250, at *13 (D.S.C. Mar. 5, 1991) (discussing an Associate's Degree). Moreover, it is well established that a plaintiff "cannot establish [his] own criteria for judging [his] qualifications for the promotion. [He] must compete for the position based on the qualifications established by his employer." Westinghouse Savannah River Co., 406 F.3d at 269. Here, the relevant Job Vacancy Announcement identified six criteria for the promotion. Id. The possession of an Associate's Degree was not listed among these criteria. See id. Accordingly, Lovett's enhanced educational pedigree is not probative of pretext.

Therefore, even when interpreting Dooley's unsupported allegations in the most charitable manner, it is clear that Dooley's "own assertions of discrimination in and of themselves are insufficient to counter [the Defendant's] substantial evidence of legitimate, nondiscriminatory reasons for [the] adverse employment action." Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989).

In sum, the facts of record are such that no reasonable jury could find a verdict in Lovett's favor on either claim.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (Docket No. 11) will be granted.

It is so ORDERED.

/s/      _REP_

Senior United States District Judge

Date: January 16, 2009
Richmond, Virginia

16